UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MICKEY HUFF                        )
                                   )
v.                                 )          1:09-cv-169/1:06-cr-71
                                   )          *Judge Mattice*
UNITED STATES OF AMERICA           )

## MEMORANDUM

Mickey Huff ("Huff") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Crim. Court Doc. 357).[1] Huff contends that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution (Criminal Court Doc. 357). The Government opposes the § 2255 motion (Criminal Court Doc. 363).

The motions, together with the files and record in this case, conclusively show Huff is entitled to no relief under 28 U.S.C. § 2255. For the reasons which follow, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and concludes that Huff's § 2255 motion will be **DENIED** for lack of merit (Criminal Court Doc. 357).

## I.    NON-DISPOSITIVE MOTIONS

Also pending before the Court are four motions filed by Huff which the Court will address in the order in which they were filed before analyzing the claims in his § 2255 motion.

---

[1]    Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

**A. Motion to Compel Specific Performance**

In his first motion, Huff claims that at the time he entered into his plea agreement, Mr. Neff promised him that he would further assist Huff by filing a subsequent Rule 35 motion in the case (Criminal Court Doc. No. 359). Therefore, Huff is asking the Court to compel the government to file a Rule 35 motion on his behalf. The Court denies the request.

Although Huff submitted an affidavit under penalty of perjury, he failed to include a single averment regarding the alleged oral promise to file a Rule 35 motion. Huff has not provided details of the specifics of this alleged promise. Rather, he simply makes a factually unsupported claim that during the plea agreement meeting the prosecutor promised he would file a Rule 35 on Huff's behalf. Huff's trial attorney's affidavit reveals that counsel had some discussion regarding a Rule 35 motion but nothing in the affidavit indicates the government made an oral promise to definitely file a Rule 35 motion. Specifically, counsel told Huff's daughters after sentencing that his continued cooperation *could* lead to an additional sentence reduction in the future (Criminal Court Doc. 363-1p, 2) (emphasis added). Consequently, counsel's averment does not demonstrate the government promised to file a Rule 35 motion. Rather counsel's averment indicates the possibility of a Rule 35 motion was contingent on Huff's continued cooperation after sentencing.

In addition, the transcript from Huff's rearraignment and his written plea agreement clearly refute this claim. A review of both documents reveal that although the government "may" bring to the Court's attention the nature, extent, and value of Huff's cooperation, there was no specific promise to subsequently file a Rule 35 motion

(Criminal Court Docs. 255 (Sealed Plea Agreement ¶ 8); 362 Rearraignment Transcript). The plea agreement also included a paragraph which stated no promises have been made by any representative of the United States to Huff as to what his sentence will be and another paragraph stating the plea agreement constitutes the full and complete agreement and understanding between the parties and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States (Criminal Court Doc. 225, ¶ 11, 15).

During his rearraignment, Huff specifically acknowledged that the government's summary of the plea agreement, which included a condensed version of the above mentioned paragraphs in the plea agreement, were correct and he agreed with the government's summary of the elements of his plea agreement (Criminal Court Doc. 362, p. 7). In addition, when the Court asked whether any officer, agent, or attorney for the government promised or suggested that "in some fashion" he would receive a lighter sentence or some other form of leniency if he pleaded guilty, rather than notifying the Court, as he now alleges, that the government had orally promised to file Rule 35 motion, Huff, under oath told the Court that no promises had been made (Criminal Court Doc. 362, p. 11). Huff is bound by the statements he made under oath during his plea colloquy. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.") (internal punctuation and citations omitted). Thus, "absent extraordinary circumstances, or some explanation of why [Huff] did not reveal other terms, . . . when specifically asked to do so by the court, . . . his plea agreement consists of the terms revealed in open court[.]" *Id.*

Additionally, the affidavit by Special Agent Bryan Freeman, with the Tennessee Bureau of Investigation, refutes this claim.  Special Agent Freeman submitted an affidavit in support of the government's response to Huff's § 2255 motion, wherein he avers he was present during Huff's numerous proffer sessions and no one made any promises to Huff regarding a motion for downward departure for substantial assistance.  Instead, "Huff was informed that if, in the opinion of Assistant U.S. Attorney Neff, information he provided amounted to substantial assistance in the investigation or prosecution of another individual, Assistant U.S. Attorney Neff would then file a motion for downward departure accordingly. . . . Huff was not ever promised that a motion for downward departure would be filed or that any specific information he provided rated such a motion." (Criminal Court Doc. 363-3).

Agent Freeman also explains that "it is generally impossible to know the value and credibility of any defendant's proffered information during the actual proffer session."  Investigators take the proffered information and then compare it to information gleaned from other sources to establish its validity.  Therefore, it make take weeks or months to learn the true value of proffered information and such was the case here as "there was no way to 'rate' Huff's proffered information at the time he provided it."  (Criminal Court Doc. 363-3).

Therefore, the Court concludes Huff's plea agreement consists of the terms revealed in open court and in his signed plea agreement and that the alleged secret oral promise to file a Rule 35 motion alleged to have been promised during his initial proffer session when he signed his plea agreement is incredulous.  Accordingly, Huff's motion

to compel specific performance of the alleged secret oral promise to file a Rule 35 motion will be **DENIED** (Criminal Court Doc. 359).

### B. Petition for Writ of Error Coram Nobis or Rule 60(b)

In an effort to circumvent the one year statute of limitations applicable to § 2255 motions and collaterally attack his judgment of conviction and seek post-conviction relief, Huff has filed a *pro* se petition for a writ of error coram nobis pursuant to 28 U.S.C. § 1651 (Criminal Court Doc. 377). The petition was filed almost two years after Huff's judgment of conviction had become final and more than a year after the one year statute of limitations for filing a § 2255 motion had expired. Huff argues he was denied his right to have counsel of his choice represent him in his criminal proceedings (Criminal Court File No. 77). Specifically, he claims he retained Attorney Jimmy Logan to represent him but was forced to let appointed counsel, Attorney Gene Shiles, represent him. The record clearly refutes this claim.

A review of Huff's filing, which includes a transcript of the hearing held during Huff's federal criminal proceedings on court-appointed Attorney Gene Shiles' motion to withdraw, reflects Huff's family paid Attorney Logan a down-payment towards his total fee to represent Huff, but Attorney Logan was not representing Huff because his full fee had not been paid. Specifically, the record reflects Attorney Shiles filed a motion to withdraw, but Attorney Logan did not make an appearance on Huff's behalf and did not appear at the hearing before the magistrate judge (Criminal Court Doc. 181). During the hearing, Attorney Shiles informed the Court that Attorney Logan had told him he did not represent Huff because his full fee had not been paid. Rather, only $4,000.00 was paid (Criminal Court Doc. 377-2). Huff requests the Court to set aside his plea and

vacate his sentence because he was denied his Sixth Amendment right to counsel of his own choosing. Huff's Sixth Amendment Right to counsel was not violated. Nevertheless, even assuming it was violated, as explained below, Huff is barred from seeking a petition for writ of error *coram nobis* to present such a challenge

Aside from the fact that the Supreme Court has noted that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of error *coram nobis*] would be necessary or appropriate[,]" *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (internal punctuation and citation omitted], in this instance 28 U.S.C. § 2255 provides the appropriate procedure for raising this claim. Here, contrary to Huff's contention, a § 2255 motion is not inadequate but rather is simply unavailable because he failed to include this claim in his pending § 2255 motion or file a timely motion to amend his § 2255 motion with this claim.

The Sixth Circuit has instructed that "the writ is used to vacate the illegal sentence or conviction of a petitioner who is no longer in custody." *Kwerkman v. United States*, 200 Fed.Appx. 578, 580 (6th Cir. 2006). Huff is presently in federal custody, thus the writ is not available to him. Moreover, a writ of error *coram nobis* "can be granted only if the petitioner shows (1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." *Id.*

Huff has not shown an error of fact in that he has not shown that Attorney Logan was representing him. Not only has Huff not demonstrated any error of fact, there is nothing before the Court that was unknown at the time of Huff's criminal proceedings of a fundamentally unjust character which would have probably altered the outcome of the

proceeding. Huff has submitted a copy of the bill from Attorney Logan demonstrating he was paid $4,000.00 and that he performed some preliminary investigative work on Huff's case. However, the magistrate judge was informed of both the down payment and the preliminary investigation performed by Mr. Logan during the hearing on Attorney Shiles' motion to withdraw. Moreover, during this hearing the magistrate judge carefully explained to Huff that Attorney Logan had not made an appearance on his behalf, he was free to hire a lawyer to represent him, and if he wanted to complete his arrangements with Attorney Logan and actually get him to enter an appearance, he could do so. Huff did not pursue this matter during his criminal proceedings.

Likewise, Huff did not pursue this claim in his § 2255 motion or a timely motion to amend. Rather, Huff is attempting to circumvent the applicable one year statute of limitations applicable to § 2255 motions by filing a petition for writ of error *coram nobis*. This he cannot do. *Matus-Leva v. United States*, 287 F.3d 758, 760-61 (9th Cir.), *cert. denied*, 123 S.Ct. 544 (2002). The Court finds no authority that would allow Huff to utilize the writ of error *coram nobis* because he is prohibited from pursuing relief under 28 U.S.C. § 2255 .

In sum, where 28 U.S.C. § 2255 already provides Huff the means to challenge the constitutionality of his federal conviction and sentence, it is that statute, and not the All Writs Act, which provides the authority for reviewing Huff's alleged unconstitutional federal sentence. *See Pennsylvania Bureau of Corrections v. United States Marshals Service,* 474 U.S. 34, 42 n. 7, & 43 (1985) ("The All Writs Act is a residual source of authority to issues writ that are not otherwise covered by statute). Huff has not alleged any circumstance which would authorize the Court to issue a writ under the All Writs

7

Act. *Id.* at 43. Accordingly, Huff's petition for a writ of error *coram nobis* will be **DISMISSED** (Criminal Court Doc. 377).[2]

### C. Motion to Proceed In Forma Pauperis

Also pending before the Court is Huff's motion requesting permission to appeal *in forma pauperis* (Criminal Court Doc. 378). Because there is no order from which Huff has filed a notice of appeal, the motion is **DENIED** (Criminal Court Doc. 378).

### D. Motion for Subpoena

In this motion, Huff requests the Court to order the Marshals Service to serve a subpoena duces tecum on the Bradley County Sheriff, directing him to provide a copy of the records showing the name, date, and purpose of any visitors to Huff, excluding his family, during the time he was housed at the Bradley County Jail during 2008 and 2009 (Criminal Docs. 379, 379-1). Presumably, Huff files this motion in relation to his Petition for Writ of Error *Coram Nobis.* However, because the Court has concluded the petition will be dismissed, discovery is not permitted. Even assuming Huff has filed the request in relation to his § 2255 motion, he has failed to provide any information to constitute the "good cause" necessary to warrant discovery under Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Accordingly, Huff's motion requesting discovery will be **DENIED** (Criminal Court Doc. 379).

### E. Motion for Compassionate Relief

---

[2] To the extent Huff attempts to file this motion attacking his criminal proceedings pursuant to Rule 60(b) of the Federal Rules of Civil Procedure he is not permitted to do so. Rule 60(b) is not to be used as an independent means to relieve a defendant of a judgment in a criminal case, because the Federal Rules of Civil Procedure are not applicable to criminal cases. *United States v. Gibson*, 424 Fed.Appx. 461 465 (6th Cir. 2011) ("Rule 60(b) [of the Federal Rules of Civil Procedure] is not applicable to criminal proceedings, and may not be used to disturb a criminal sentence or conviction.")(internal punctuation and citations omitted).

Huff has filed a motion which he has entitled as a motion for compassionate relief without citing the statutory authority under which he is proceeding (Criminal Court Doc. 400). In this motion, Huff requests to be released from prison to take care of his mother. Huff claims his wife suffers health issues and is unable to take care of his mother. Therefore Huff asserts that although he also suffers health issues he should be released to care for his mother and wife (Criminal Court Doc. 400).

The government opposes the motion (Criminal Court Doc. 403). The government consulted with United States Probation Officer Beth Miller who interviewed Huff's family members and learned the defendant has four (4) able bodied siblings who, although suffering some medical difficulties of their own, live in the same area as Huff's mother and wife and are taking care of her needs. In addition, Ms. Miller learned Huff's wife is well enough to take care of her 3-year old grandchild during the day. Therefore, the government argues Huff's claims are exaggerated and opposes early termination of his imprisonment (Criminal Court Doc. 403). Huff has filed a response to the government's opposition which includes medical records and an affidavit from Huff's mother stating although she has five children, Huff is the only child that has ever been willing to help her (Criminal Court Doc. 405, p. 4). Notably, Huff's mother does not aver that she has specifically requested her other children to assist her since her health is deteriorating and they refused.

Nevertheless, a district court's authority to modify a sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. 3852(c). Title 28 U.S.C. § 3582(c) provides that "[t]he court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons if it finds

that−(i) extraordinary and compelling reasons warrant such a reduction[,]" or other reasons which are inapplicable to Huff's case. A district court may not grant a compassionate release to a federal prisoner absent the filing of a motion by the Director of the Bureau of Prisons ("BOP"). *Engle v. United States,* 26 Fed. Appx. 394, 397 (6th Cir. 2001) (finding the district court lacked jurisdiction to grant compassionate release absent motion form the BOP Director); *see also Crowe v. United States,* 430 Fed. Appx. (6th Cir. 2011) (holding that a federal court lacks authority to review a decision by the BOP to not seek a compassionate release for an inmate); *Smoke v. United States*, 2009 WL 5030770, *2 (D. Minn. Dec. 14, 2009) (request for early release to care for ill spouse and three children denied and case not transferred to proper court because it was not presented by the Director of the BOP); *United States v. Dresbach,* 806 F.Supp.2d 1039, 1040 (E.D. Mich. Aug. 30, 2011) (Noting that pursuant to 28 CFR § 571.62, the BOP allows for medical and non-medical conditions of the inmate to be considered as a basis for compassionate release).

Here the Director of the BOP has not filed a motion for Huff's compassionate release. Accordingly, Huff's motion for compassionate release will be **DENIED** (Criminal Court Doc. 403).[3]

## II.    PROCEDURAL BACKGROUND

On December 18, 2007, a grand jury for the Eastern District of Tennessee, Chattanooga Division, returned a twenty-two-count Indictment charging Huff and others with drug trafficking violations. Specifically, Count One of the Second Superseding

---

[3]      To the extent Huff attempts to rely on *Pepper v. United States*, 131 S.Ct. 1229 (2011) to encourage the Court to grant this motion, it is misplaced as that case refers to a court considering evidence of a defendant's post-sentencing rehabilitation at a resentencing, not as ground for compassionate relief (Criminal Doc. 397).

Indictment charged Huff along with Larry Tallent, Douglas Arp, Shelby Banks, Jerry Bryan, Daniel Cole, Gary Kyle, Perry Liner, Billy J. Tallent, Andrew Williams, Darlene Williams, and Michael Withrow with conspiracy to distribute and possess with the intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Criminal Court Doc. 57), Co-defendants Tallent, Bryan, Arp, Cole, and Liner also were charged individually with substantive drug and firearms offenses in twenty-one additional counts..

On June 16, 2008, Huff pleaded guilty pursuant to a plea agreement to Count One of the second superseding indictment (Criminal Court Docs. 224−Minute Entry of Plea; 225−plea agreement). On October 27, 2008, the Court sentenced Huff (Criminal Court Docs. 308−Minute Entry from Sentencing, 311−Judgment, and 352−Sentencing Hearing Transcript).

The United States Sentencing Guidelines were used to calculate Huff's offense level in his presentence investigation report ("PSR"). The base offense level was 34, based on his stipulation that he was responsible for at least 2 kilograms of methamphetamine. After a three-level reduction for acceptance of responsibility, his total offense level was 31. Huff had six criminal history points, placing him in Category III. As a level 31/category III offender, Huff's advisory Guidelines range was 135 t0 168 months, but since he was subject to the mandatory minimum sentence of twenty years pursuant to 21 U.S.C. § 841(b)(1)(A) based on his prior felony drug conviction in this Court for distribution of methamphetamine, the effective range for imprisonment was 240 months.

Taking into consideration the sentencing factors in § 3553(a), Huff's cooperation with the government, and that a sentence within the guidelines would essentially result in a life sentence for Huff, who was 58 years old at the time, the Court sentenced Huff to 150 months of incarceration (Criminal Court Doc. 352). Huff waived his right to appeal in his plea agreement; thus, no direct appeal was filed. Huff subsequently filed this § 2255 motion (Criminal Court Doc. 357).

III.    **STANDARD OF REVIEW**

This Court must vacate and set aside a sentence if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that, the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, . . ." 28 U.S.C. § 2255.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637

(1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a nonconstitutional error there must be a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States. v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thus, a § 2255 motion may not be used to litigate issues that should have been presented and decided on direct appeal unless (1) cause is shown for the tardy challenge and (2) actual prejudice resulting from the error is demonstrated. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Alternatively, a § 2255 movant could raise such issues if he can show that he is actually innocent of the crime. *See Bousley*, 523 U.S. at 622.

Finally, a movant collaterally attacking his sentence or conviction pursuant to § 2255 has the burden of proving the grounds for collateral attack by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980); *United States v. Stifel*, 594 F.Supp. 1525, 1528 (N.D. Ohio, 1984); and *McNeil v. United States*, 72 F.Supp.2d 801 (N.D. Ohio, 1999). When deciding whether to grant a § 2255 motion the Court should draw all reasonable inferences from the evidence in the criminal proceeding in a light most

favorable to the government. *Carnine v.United States*, 974 F.2d 924, 928 (7th Cir. 1992) (citing *Messinger v. United States,* 872 F.2d 217, 219 (7th Cir. 1989); *United States v. Cosentino*, 869 F.2d 301, 302 (7th Cir.), *cert. denied,* 492 U.S. 908 (1989), *Taylor v. United States*, 2012 WL 669521, *8 (E.D.Tenn. Feb. 28, 2012) (noting the court relies on "the reasonable inferences that can be drawn from the criminal proceedings").

## IV. FACTS

The following pertinent facts are taken from the PSR prepared by the United States Probation Office:

28. On May 18, 2006, Larry Andrew Tallent came to the attention of the Drug Task Force (DTF) in McMinn County, Tennessee, when law enforcement was called to a domestic disturbance at the home where Andy Tallent lived with his girlfriend. Witnesses stated that Andy Tallent was in the yard of the home, shooting at his girlfriend's possessions, before police arrived. When questioned, Mr. Tallent consented to a search and retrieval of weapons in the house. In the bedroom, officers located a safe. Andy Tallent gave officers the combination to the safe, and officers retrieved l7 guns from the safe. (Two weapons were stolen, and one had the serial number removed.) (Tallent later told witnesses that the safe had also contained methamphetamine that the officers did not see.) Tallent stated that there were no other weapons in the house that he knew of, and signed a Consent to Search form, allowing officers to search the rest of the house.

29. During the search, officers located: marijuana in the bedroom, drug trafficking paraphernalia, a dinner plate with white residue, and a glass pipe used to smoke methamphetamine. In an outbuilding, officers found a shaving bag inside of a garbage bag which contained about 64 grams of methamphetamine. Another safe was located, and Andy Tallent gave officers the combination. Inside, officers found drug paraphernalia and a white powder which appeared to be drugs. Andy Tallent denied that the safe was his, even though he knew the combination. A pistol case found in the outbuilding safe matched a pistol taken from the bedroom safe. The front porch of the house was covered by a security camera.

30. Andy Tallent was arrested. On June 27, 2006, he was federally indicted on drug and weapon charges. He initially agreed to cooperate and provided law enforcement with detailed information regarding the drug trafficking activity of himself and other individuals in the McMinn County,

Tennessee, and Atlanta, Georgia, areas. Eventually, Mr. Tallent withdrew his cooperation, but the investigation continued. As other people involved in this conspiracy were approached by investigators, they also cooperated and provided information. The evidence in the case is primarily based upon the multiple statements of codefendants, which were corroborated by other codefendants. The offense began in April 2004, and continued until September 2007.

31.    Andy Tallent stated that he was introduced to a source for methamphetamine in Atlanta by his brother, Billy "B.J." Tallent. Andy Tallent got methamphetamine from an Atlanta source named Amanda, initially through his brother. Then he began dealing directly with the source. He sold methamphetamine to Shelby Banks, Gary "Rusty" Kyle, Mike Withrow, and Daniel Cole. He also got methamphetamine from other sources, including Daniel "Gomez" Schleben. Shelby Banks, received methamphetamine from Tallent and Mickey Huff, who had a source in Atlanta named "Santana." Eventually, Banks began dealing directly with Santana. Banks sold methamphetamine to Douglas Arp and Mike Withrow. Daniel Cole purchased drugs from Andy Tallent, Daniel Schleben, and Jerry Bryan. He sold methamphetamine to Andrew Williams, and his wife, Darlene Williams. There are other smaller customers involved in the offense who were part of the investigation, but not charged as part of the federal case.

32.    Cooperating Witnesses, and the defendant's own statements, indicate that Shelby Banks was involved in methamphetamine trafficking from October 2005, through 2007. Mickey Huff was involved in methamphetamine trafficking with Shelby Banks. Huff introduced Banks to a supplier in Atlanta known as Santana. Banks eventually went around Huff to deal directly with Santana, cutting Huff out of the transaction. Several witnesses stated that this angered Huff. Daniel Russell, known as Duke, is serving a federal prison sentence for methamphetamine manufacturing and provided information that Huff had once been a source of methamphetamine for him. He also reported that he would purchase the drug from Huff at the car dealership and knew that Huff used an outbuilding at the location to store methamphetamine sometimes. Another Cooperating Witness told law enforcement that he had purchased methamphetamine from Huff as far back as 1999, and that Huff sold methamphetamine from a car dealership he worked at in Riceville, Tennessee. Several witnesses corroborated that Huff sold methamphetamine from the car dealership.

33.    Based upon the voluntary statement of the defendant, and statements and corroboration of coconspirators, the government estimates that Mickey Huff was involved in the distribution of more than 2 kilograms of methamphetamine.

(PSR at 7-8).

## V.    ANALYSIS

Huff's § 2255 motion to vacate contains four alleged instances of ineffective assistance of counsel which the Court will address separately as sub-claims under the claim of ineffective assistance of counsel after analyzing the applicable law.

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI. This right extends beyond the mere presence of counsel to include "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  To establish a claim of ineffective assistance, Huff must demonstrate two essential elements: (1) that counsel's performance was deficient, that is, below the standard of competence expected of attorneys in criminal cases; and (2) that counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial, rendering the outcome of the trial unreliable.  *Id.* at 687-88.

With regard to plea proceedings, Huff must show that but for counsel's deficient performance, he would not have pleaded guilty.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial.  *See Parry v. Rosemeyer,* 64 F.3d 110, 118 (3rd Cir.1995).  Under *Strickland*, review should be deferential and maintain a strong presumption in favor of finding counsel's conduct within the wide permissible range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689.

As an initial matter, the Court observes that Huff has failed to meet the prejudice prong as to any of his claims because although he discusses his burden of proof in relation to the prejudice prong he never alleges that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. at 59. Indeed, had he proceeded to trial and been convicted, the best sentence he could have hoped for would have been the statutory mandatory minimum of 240 months which is substantially more than the 150 month sentence he received based on his decision to enter a guilty plea and cooperate with the government. Furthermore, as explained below, Huff has failed to demonstrate counsel was ineffective.

In his § 2255 motion, Huff raises four claims against counsel. First, Huff complains that counsel was ineffective for failing to pursue a direct appeal. Second, Huff complains that his plea was unknowing and involuntary because he was not able to read his plea agreement because he did not have his glasses, and counsel did not read it to him. Because Huff argues his wavier of appellate rights cannot be enforced due to his unknowing and involuntary plea, the Court will first address the voluntariness of his plea before addressing his claim that counsel was ineffective for failing to file a direct appeal.

In his third claim, Huff argues the government breached the plea agreement because it only advised the Court of his assistance in relation to the Shelby Banks case and not the Jerry Bryan case. In his confusingly pled final claim, Huff claims counsel was ineffective for failing to review the PSR with him prior to sentencing (Criminal Court Doc. 357). Yet, under supporting facts he argues counsel had an ethical duty to review

the PSR with him prior to entry into the plea agreement and counsel failed to do so. The Court will address each claim separately.

## A. Knowing, Voluntary Plea

On June 16, 2008, Huff entered a guilty plea to Count One of the indictment charging that from approximately April 2004 until September 2007, he conspired with his co-defendants and others to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). In his § 2255 motion, Huff now claims that it was not a voluntary and intelligent admission or guilty plea because he was not allowed to read the plea agreement before signing it and counsel refused to read it to him. In addition, Huff claims he was unable to fully comprehend the plea agreement due to the fact that he only has an eighth grade education. Notably, Huff is not claiming counsel did not discuss the plea agreement with him and explain the consequences of the plea agreement, but rather Huff claims he did not fully comprehend the plea agreement because, in addition to only having an eighth grade education, he did not read the plea agreement, nor was it read to him.

Although Huff does not aver he would have proceeded to trial but for counsel's alleged failure to read the plea agreement to him, Huff contends he has demonstrated prejudice because he received no benefit from the plea agreement "he signed in the blind." (Criminal Court Doc. 358, at 13).

The transcript of the statements made by Huff under oath and penalty of perjury rebut the claims he now advances. In addition, counsel's detailed affidavit clearly

rebuts Huff's vague assertions in his affidavit. Notably, Huff has not filed a subsequent affidavit challenging trial counsel's averments.

In his affidavit, Huff avers:

> (3) While in the Bradley County Jail, Mr. Shiles, Paris Gillette, Brian Freeman, and Assistant U.S. Attorney, Steve Neff came to see me. They wanted a proffer and for me to sigh a plea agreement. I questioned the plea agreement and was informed by A.U.S.A. Neff and my attorney that I had to accept this agreement before the government would agree to help me. I looked at the document and explained to Mr. Shiles that I could [sic] see it as I did not have glasses with me. Mr. Neff had his reading glasses with him and I ask [sic] him to borrow his. He responded by saying that his were old and that they were no good. I never was read the agreement nor was I able to read the agreement myself.

> (4) I was told by Mr. Shiles that I needed to go ahead and just sign the agreement and then the agents could talk to me and it would help me. I signed the agreement, and did a full proffer.

(Criminal Court Doc. 358, Huff's Affidavit). Glaringly missing from Huff's affidavit is a claim that he was not aware of the contents of the plea agreement or an averment that counsel failed to explain the terms of the plea agreement to him. In response to Huff's allegations, the government submitted Huff's trial counsel's affidavit, to which Huff has not responded.

Attorney Gene Shiles, Huff's trial counsel, adamantly denies Huff's claim and avers that he thoroughly reviewed the plea agreement with Huff.

> 4. Affiant met with Mr. Huff on numerous occasions while this case was pending (approximately 18 occasions not including hearing dates). Prior to Mr. Huff's guilty plea, affiant met with him and thoroughly reviewed the plea agreement. On one of those occasions, I began reading the plea agreement to Mr. Huff because he complained about his eyesight. However, Mr. Huff stated that he understood the plea agreement and did not need to have it read to him. Because Mr. Huff had previously pleaded guilty to Distribution and Possession with Intent to Distribute Methamphetamine in this Court in 1995, I also discussed that case with him and came to understand that Mr. Huff was already familiar with the process of pleading guilty in federal court.

19

5.	Mr. Huff expressed his willingness to plead guilty and to cooperate with investigators in order to attempt to obtain a downward departure in his case because he understood the strength of the government's case and because he wanted to provide timely information to the government before others in the conspiracy beat him to it.  Mr. Huff knew that he was facing a twenty-year mandatory minimum sentence due [to] his prior federal drug conviction and knowingly signed a plea agreement intending to waive his appellate rights in this case in order to have the opportunity to cooperate with investigators.  The appellate waiver section of the plea agreement was stressed to Mr. Huff on more than one occasion.  His substantial assistance in fact led to the filing of a motion for downward departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) that resulted in a sentence 90 months below the 240-month statutory mandatory minimum.

(Criminal Court Doc. 363-1, at 1-2).

As the Court understands Huff's claim, he contends that on the date he signed the plea agreement he did not personally read the document nor did anyone read it to him.  Although preferable, it is not necessary for a defendant to personally read his plea agreement or have someone read it to him as long has he is properly advised of the terms and consequences of the plea agreement. Here, counsel avers that prior to entry of his guilty plea, he "thoroughly reviewed the plea agreement[]" with Huff. (Criminal Court Doc. 363-1, at 1).

Huff does not deny that counsel reviewed the plea agreement with him or that he did not know the terms of the agreement, as he admits he "questioned the plea agreement[.]" (Criminal Court Doc. 358).  In addition, Huff has not identified one single provision in the plea agreement of which he was not aware.  Furthermore, in addition to not claiming he was unaware of the contents of his plea agreement, he does not deny counsel thoroughly reviewed the plea agreement with him or that when counsel did begin reading the plea agreement to him, he angrily interrupted and instructed counsel

to stop because "he understood the plea agreement and did not need to have it read to him." (Criminal Court Doc. 363-1, at 1).

It is beyond dispute that during his rearraignment proceedings, after the government summarized the essential elements of his plea agreement, Huff agreed the government properly summarized his plea agreement and he understood the rights he was waiving (Criminal Court Doc. 362). If, in fact, he did not know the contents of his plea agreement, that was the time to notify the Court. Huff is bound by his sworn statements to the Court.

> "Representations of the defendant, his lawyer, and prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73 (1977).

Huff's allegation that because he only has an eighth grade education, he could not fully comprehend the plea agreement further undermines his credibility. Regardless of his formal education, Huff has experience as a businessman, having run used car dealerships in the past. In addition, he was an evangelical preacher for the Church of God for nineteen years, traveling widely in that capacity (PSR, ¶ 68, 69).

In addition to the undisputed record in this case, Huff's life experiences and his previous experience pleading guilty in federal criminal court to a drug distribution count, undermines his assertions that he was forced to sign the plea agreement blindly and was unable to understand its terms. Consequently, Huff has not demonstrated he entered an unknowing, involuntary, and unintelligent plea. Accordingly, relief will be

21

**DENIED** on Huff's claim that his guilty plea was unknowing, unintelligent, and involuntary.

### B. Direct Appeal

Huff claims counsel was ineffective for failing to file a direct appeal. Huff claims he ask counsel "what about an appeal" and his daughters also contacted counsel about doing something further for him but counsel stated there was nothing more that could be done (Criminal Court Doc. 357). In his affidavit, Huff avers when he asked counsel about an appeal he was told he could not file an appeal because of the waiver contained in his plea agreement. Huff now avers "[h]aving not read the agreement or really seeing it until sentencing, I did not know what he was talking about." (Criminal Court Doc. 358, Attachment 1, p. 3) Huff's claim is incredulous.

First, a waiver of appellate rights in a plea agreement is binding because "a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (internal punctuation and citation omitted). Likewise, "a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). Here, however, Huff argues the waiver is not valid because he "did not read the agreement or really see[ ] it until sentencing[.]" (Criminal Court Doc. 358, Huff's Affidavit). Huff's averment is belied by the record.

During his rearraignment, while under oath, Huff and the Court engaged in the following colloquy:

THE COURT: All right. Mr. Huff, have you had an opportunity to read the second superseding indictment and to go over your case at adequate length with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And you've had adequate opportunity to discuss your case with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with your attorney's representation of you in the case thus far?

THE DEFENDANT: Yes, sir.

(Criminal Court Doc. 362, p. 4).

The Court later had the prosecutor summarize the essentials of the plea agreement at which time she specifically stated, "in exchange for this plea agreement, the defendant specifically agrees not to file a direct appeal, nor to collaterally attack a conviction with post-conviction writ of habeas corpus such as that found under Title 28, United States Code, Section 2255." (Criminal Court Doc. 362, p. 7). When asked if he agreed with the summary of the essential elements of his agreement with the government, he unequivocally responded "Yes, sir." (*Id.*).

When the Court addressed defense counsel he also agreed with the government's summary of the essential elements but stated "[w]ith the caveat that I think just transpired between the earlier case." That prompted the following discussion where the Court confirmed that Huff understood he was waiving his right to pursue a direct appeal.

THE COURT: That's about the waiver of appeal and habeas corpus rights and I want to talk about that right now.

MR. SHILES: Yes.

THE COURT: Mr. Huff, I want to call your particular attention there to Paragraph 13 of your plea agreement with the government which begins right at the bottom of Page 5, continues over to the top of Page 7. In that paragraph, you are waving your right to appeal both your conviction and your sentence in this case, as long as that sentence is within a range specified by the Federal Sentencing Guidelines.

Now, you also waive your right to file what's known as a petition for the writ of habeas corpus in your case, except under certain limited circumstances. I want to make sure, have you talked with your attorney about the rights that you're waiving in that paragraph, and do you understand the rights that you're waiving in that paragraph in your agreement?

MR. SHILES: Your Honor, we had an abbreviated conversation, and it was my understanding at our last meeting - - let me just be candid that Mr. Huff wanted to read that himself. We were ready to do that, but he said he could read it, and that's where we left it.

THE COURT: You know, do you need time? Have you read that? Do you understand the rights that you're waiving in that paragraph, Mr. Huff?

MR. SHILES: Do you understand, if not, let the judge know, he's really asking you.

THE DEFENDANT: I know.

MR. SHILES: Do you understand?

THE COURT: If you don't, I'd rather you take some time to discuss it with Mr. Shiles.

MR. SHILES: That paragraph is saying that - -

THE COURT: Please don't - - I'm not trying to talk you out of anything.

THE DEFENDANT: I know.

THE COURT: Mr. Huff, what I'm trying to do is make sure that you understand what your agreement with the government is because I dare say you haven't signed any more important agreements than this in your life. I don't know that, but I'd say this is a pretty important one.

THE DEFENDANT: Yes, sir.

MR. SHILES: As was explained to the other defendant, Mr. Liner, this paragraph is saying that if this is within the guidelines which are calculated by

that book that we looked at, the sentencing guideline book, if it falls within that range, then you agree not to appeal it, but if it's over, you could appeal it.

Now that's in layman's terms what that means. And the judge is wanting to be sure that you understand that, and that you understand that if he accepts that plea agreement you'll be held to that.

THE DEFENDANT: Okay. Yes, sir.

THE COURT: All right. Do you understand the rights you're waiving in Paragraph 13?

THE DEFENDANT: Yes, sir.

THE COURT: You're waiving those rights voluntarily and knowingly, right?

THE DEFENDANT: Yes, sir.

THE COURT: I'm not - - you may not like it, but it's up to you, I mean, that's part of your deal with the government, right?

THE DEFENDANT: I understand. Thank you.

(Criminal Court Doc. 362, pp. 8-10).

Any deficiency on counsel's part regarding the review of the waiver provisions in Huff's plea agreement was completely cured by the Court's and counsel's colloquy with Huff during the rearraignment hearing. Aside for the fact that the Court has determined Huff entered a knowing, intelligent, and voluntary guilty plea, the transcript undoubtedly reveals that Huff's responses under oath verify he voluntarily waived his rights to file a direct appeal and post-conviction relief motions. Accordingly, because Huff voluntarily, knowingly, and intelligently waived his right to pursue a direct appeal, he is **DENIED** relief on his claim that he was denied his right to appeal.

## C. 5K1.1 Motion

Next Huff claims the government breached his plea agreement because they promised they would file a § 5K1.1 motion for his assistance with the Shelby Banks

("Banks') and Jerry Bryan ("Bryan") cases.  According to Huff, at sentencing, he was only given credit for the Banks case and counsel was ineffective for not objecting to the government's failure to give him credit on the Bryan case.  Curiously, Huff does not address this alleged oral promise in his affidavit.  Rather, he avers "I assisted the government with names and information in exchange the government filed a § 5K1.1 motion." (Criminal Court Doc. 358).

This claim is directly contradicted by Huff's statements under oath that aside from any agreements he made with the government as part of his plea agreement, no officer, agent, or attorney for the government promise or indicated he would receive a lighter sentence or other form of leniency by pleading guilty (Criminal Court Doc. 362).  Likewise, this claim is directly refuted by Huff's signed plea agreement which specifies "[]his plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings or understandings between the defendant and the United States."  (Criminal Court Doc. 255, at 8, ¶ 15).  Huff, is bound by his sworn statements he made in response to the Court's inquiry under Rule 11.  *Warner v. United States,* 975 F.2d 1027, 1212 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993).

Moreover, the record clearly demonstrates Huff received credit for the substantial assistance he actually provided and counsel was not deficient in this regard.  The sentencing transcript clearly demonstrates the government fulfilled its obligation specified under the plea agreement and advised the Court as to the nature and extent of Huff's substantial assistance.  Huff argues the Court's departure was based only on

his assistance in the case against co-defendant Shelby Banks and he was not given credit for his assistance as to Jerry Bryan.

In addition, TBI Special Agent Bryan Freeman, who was present with ATF Special Agent Paris Gillette and Assistant U.S. Attorney Steve Neff during proffer sessions with Huff, avers no one made any promises to Huff regarding a motion for downward departure for substantial assistance. Rather, Huff was informed that if the prosecutor determined the information he provided amounted to substantial assistance, then he would file a motion for downward departure. Huff was told that the more information he provided, the greater his chance that some of the information would qualify as substantial assistance, but he was never promised that a motion would be filed or that any specific information he provided rated such a motion (Criminal Court Doc. 363-2).

In addition, Agent Freeman avers that none of the information Huff may have provided about his co-conspirator Jerry Bryan was significant enough to convince Bryan to plead guilty or to be presented at his trial. Indeed, when Bryan went to trial, Huff was not called as a witness.

The government advised the Court as to Huff's assistance as to Banks and added that he had provided "some third party assistance on his behalf which has furthered the ongoing investigation. . . . In other words, somebody else on Mr. Huff's behalf was willing to work with the government and has worked with the government in furthering the investigation." (Criminal Court Doc. 352, at 5). In addition, the Court was advised that Huff made a phone call and that in the prosecutor's opinion, Huff's assistance amounted to "near the top of standard" assistance−good standard.

Furthermore, the government's sealed written departure motion which was considered by the Court indicated that in addition to Banks, Huff had provided assistance as to other co-defendants.

Other than Huff's factually unsupported claim that the prosecutor said "I will go ahead and grant you a § 5K1.1 for Banks and Bryan[,]"there is nothing before this Court indicating the government breached its agreement with Huff. Huff's claim of this alleged oral promise is not made under penalty of perjury and is directly contradicted by the record in his underlying criminal case and Special Agent Bryan Freeman's sworn affidavit (Criminal Court Doc. 363-2). Not only is any averment regarding this alleged discussion glaringly missing from his affidavit—the only document which he submitted under penalty of perjury—Huff does not describe the information he proffered in relation to Bryan for which he contends he should be rewarded.

In sum, the government advised the Court Huff provided assistance in relation to Shelby Banks as well as other co-defendants. Huff's unsupported allegation of an oral promise regarding an assessment of the information Huff provided as to Jerry Bryan is directly refuted by his oral responses made under oath to the Court's inquiries during his rearraignment and Agent Freeman's affidavit. Accordingly, relief will be **DENIED** on this claim as Attorney Shiles was not deficient for failing to object to the government's accurate description of Huff's cooperation.

### D.  Review of PSR

In his final claim, Huff contends counsel failed to review the PSR with him prior to sentencing. In his supporting factual statement and his supporting brief, however, he changes the claim and argues counsel had a legal and ethical obligation to review the

PSR with him prior to entry of his guilty plea and failed to do so. According to Huff, "[s]everal days after the plea was entered into[,] Petitioner's counsel came to the jail in order to cover his failure; by this time it was too late and 'after the fact.'" (Criminal Court Doc.357). Noticeably lacking from Huff's affidavit, is any averment pertaining to this claim.

First, counsel was not ineffective for failing to review the PSR with Huff prior to his guilty plea, as the PSR was not prepared until *after* he entered his guilty plea. As to his claim that counsel did not review the PSR with him prior to sentencing, once again, the Court finds Huff's claim to be incredulous. This claim is directly refuted by his statement to the Court under oath. The Court asked Huff if he had review the presentence investigation report and he responded, "[y]es sir, I have." (Criminal Court Doc. 352, at 2). When asked if he had sufficient opportunity to discuss the PSR with counsel, he stated not really, have I, asking counsel. Counsel responded that he thought they had but Huff needed to answer the Judge as he was the one asking the question. Then Huff responded yes sir to the Court. Huff's statements to the Court under oath clearly demonstrate counsel reviewed the PSR with him prior to sentencing, even though Huff was questioning whether the discussion was sufficient (Criminal Court Doc. 352, at 2-3).

Moreover, Mr. Shiles avers he met with Huff no fewer than four times after rearraignment and prior to sentencing to review the PSR. Because of Huff's experience with the federal judicial system, he was generally familiar with the nature and form of Presentence Reports. They discussed his sentence at length and that counsel would not be filing any objections to the PSR because there were no errors. Huff understood

his only hope of receiving a sentence below the minimum mandatory twenty year sentence was with his substantial cooperation (Criminal Court Doc. 363-1, Mr. Shiles Affidavit).

For the reasons detailed above, Huff's claim that counsel failed to review the PSR with him prior to sentencing is without merit and relief will be **DENIED**.

## VI.   CONCLUSION

For the reasons set forth above, the Court concludes Huff is not entitled to any relief under 28 U.S.C. § 2255; thus his § 2255 motion will be **DENIED** (Criminal Court Doc. 357).   Further, Huff's motions requesting to compel specific performance, to appeal *in forma pauperis*, a subpoena, and compassionate relief will be **DENIED** (Criminal Court Docs. 359, 378, 379, 400) and his petition for a Writ of Error *Coram Nobis* will be **DENIED** (Criminal Court Doc. 377).

In addition, the Court will certify any appeal from this action would not be taken in good faith and would be totally frivolous.   Therefore, any application by Huff for leave to proceed *in forma pauperis* on appeal will be denied.   Fed. R. App. P. 24.

Further, Huff has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or that reasonable jurists would disagree on the resolution of this matter. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).   Thus, a certificate of appealability will not issue.

An appropriate judgment will enter.


        _____/s/ Harry S. Mattice, Jr._____
            HARRY S. MATTICE, JR.
            UNITED STATES DISTRICT JUDGE